## No. 8106.

STATE OF LOUISIANA EX REL. J. C. EGAN, ATTORNEY GENERAL, VS. HIRAM FOLLETT.

What, under the laws of Congress and of this State, constitutes the Port of New Orleans.
A Branch Pilot of the Port of New Orleans, who has his domicil in the Parish of Orleans, must be sued in said Parish under the "Intrusion Act", and not in the Parish of Plaquemines, on the ground that such a person has no land domicil and that his functions are exclusively exercised within the latter Parish.

APPEAL from the Civil District Court, parish of Orleans.  *Monroe, J.*

### J. C. Egan, Attorney General, Relator and Appellant:

First—The office of Branch Pilot of the port of New Orleans is a State office, and has no duties connected with the parochial affairs of any parish.

Second—The duties of a Branch Pilot of the port of New Orleans are to be performed afloat; the office is aquatic, of a marine character; its duties are all performed on water, and are not such as to enforce any domicil on land as the situs of performance.

Third—The law of Louisiana never contemplated a floating domicil, or a home afloat, or a domicil at sea, or "A life on the ocean wave," as conferring any domicil or determining the jurisdiction, ratione personæ, of its courts and shifting jurisdiction away from the shore domicil of the defendant.

Fourth—The general rule is, that in all suits in personam the defendant must be sued at the parish of his domicil, and the action to provide for the removal of persons unlawfully usurping or intruding into and unlawfully holding office (R. S. sec. 2593 et seq.), is not an exception to the general rule.

Fifth—Under the provisions of the sections of the Revised Statutes above referred to, a suit to oust a defendant residing in the parish of Orleans from the office of Branch Pilot of the port of New Orleans, usurped by him, must be brought in the Court of the parish of Orleans, where he is domiciled.

### E. Howard McCaleb and Brice & Pardee for Defendant and Appellee:

First—The State has no interest in the fees of the office of Branch Pilot of the Port of New Orleans. R. S., Sec. 2703; 27 A. 69. Therefore, when the State is *sole* plaintiff in an "Intrusion into office" suit, the Court will *ex-officio* notice the want of a moneyed interest sufficient to give jurisdiction, and dismiss the appeal.

Second—A Branch Pilot of the Port of New Orleans is a State officer, appointed and commissioned by the Governor, and required to give bond. R. S. Secs. 1583, 1584, 2636, 2687, 1585, 2688; Act No. 99 of 1880; 14 A. 7. The "port of New Orleans" embraces several

State of Louisiana ex rel. Egan, Attorney General, vs. Follett.

parishes and "all the waters and shores of the Mississippi river." Rev. Stats. of U. S. 2568. Hence, the duties of a pilot of the "Port of New Orleans" need not necessarily be confined to the city limits.

Third—The *boarding stations*, passes, bars and mouths of the river, where Branch Pilots perform their official duties, in piloting vessels over the bars, are all within the territorial limits of the Parish of Plaquemines. R. S. Sects. 2709, 2693, 2695, 2696; 14 L. 485; 16 A. 360. The Court will judicially notice a geographical fact. 11 A. 432; 2 R. 403. Although the duties of a Branch Pilot are to be performed on water, the Judge of the District Court of Plaquemines parish has jurisdiction over both land and water within the territorial limits assigned him.

Fourth—The office of Branch Pilot is conferred for life or during good behavior. The acceptance of such an office operates an immediate transfer of the domicil of the officer to the parish where he is to exercise his functions. R. C. C. Art. 45; 4 L. 69; 12 L. 190; 28 A 243; Phillimore on Domicil, Ch. VII, CXIII; Duranton 1, 1 t. 3 du Domicile; Merlin Rep. de Juris. Domicil, III Du Dom. des Foncs. Pub.

Fifth—Suits under "The Intrusion Act" must be brought by "the District Attorney of the parish where *the case arises.*" R. S. Sec. 2404. "The case arises" where the acts of intrusion and usurpation are done, and where the functions of the office are performed. A judge cannot exercise jurisdiction beyond the territory assigned him. C. P. 90. Where the acts of usurpation and intrusion complained of occur beyond the jurisdiction of the court in which the suit is filed, it should be dismissed.

Sixth—The "Intrusion Act" resembles the ancient writ of *quo warranto* (Blackstone, Book III, * 263; High Ex. Remedies, § 591), and proceedings thereunder are essentially of a criminal nature. 21 A. 655. Usurpations of and intrusions into offices are crimes against the State, and under the statute the venue must be stated in the information, and suit instituted in the parish where the cause of action arises. R. S. Sec. 2599; 30 A. 593. The acts alleged in plaintiff's petition are violations of a criminal statute (Sec. 2 of Act No. 63 of 1877), and, like trespass (C. P. 165), such a suit should be brought before the court where the alleged offense was committed.

Seventh—It matters not where a usurper's domicil may be, it is the act of usurpation that gives the Court jurisdiction, and a suit to oust him should be instituted before the tribunal of the locality where the functions of the office are performed. The duties to be performed by a State officer may be confined to particular territory. 32 A. 691.

Eighth—The cases in 21 A. 258 and 550, involved entirely different questions from those arising in the cause in hand.

---

The opinion of the Court was delivered by

Todd, J.   The petition charges that the defendant, "before, and on the 10th November, 1880, did unlawfully usurp, intrude into and unlawfully exercise the office, rights and franchise of Branch Pilot of the port of New Orleans, in this State, and still does so unlawfully usurp, intrude into and unlawfully hold and exercise the office and franchise of such pilot of the port of New Orleans." It is alleged that the emoluments of this office exceed the sum of $2000 per annum, and the petition concludes with a prayer that the defendant be adjudged to have unlawfully intruded into said office, and be ejected therefrom.

The proceeding was intituted before the Civil District Court of the parish of Orleans, and at the domicil of the defendant.

The defendant excepted to the action, on the ground that the court was without jurisdiction *ratione materiæ,* because the action must be

brought where the case arises, and that under the laws on the subject the functions of the office in question were to be performed exclusively within the jurisdiction of the District Court of the parish of Plaquemines; and for the same reason it was urged that the Attorney General was without authority to institute the proceeding, his authority extending only to such cases as may arise in the parish of Orleans.

The exception was sustained, and the suit dismissed, and from such judgment the State has appealed.

We find from an examination of the laws, Federal and State, bearing on the subject of this controversy, the following leading provisions:

The port of New Orleans includes the parish of Orleans and other parishes, and all the waters of the Mississippi river, and of the rivers which empty into it within the State, with certain declared exceptions.

Not less than fifty pilots are to be appointed for the port of New Orleans, and it is conceded by both parties to this controversy that such pilots are State officers. It is required that pilots must give bond in the sum of $2000, with two sureties residents of the City of New Orleans, to be approved by the Master and Wardens of the port of New Orleans.

All pilot boats are required to exhibit certain kind of lights, "and to cruise to the seaward, from the mouth of the Mississippi, five nautical miles." It is clear from these provisions that the duties to be performed by these officers are on the waters of the rivers and the sea, and are designed, as their name implies, for the benefit of the port of New Orleans and the commerce of that port. And their functions extend everywhere within the limits of the district that pertain to the port of New Orleans, although certain specific acts pertaining to these functions may be more or less confined to certain localities in that district.

It seems to us a palpable perversion of the meaning of the law to argue that the acts and functions of this officer pertain alone to the parish of Plaquemines, because certain duties imposed can be performed alone within the limits of that parish, such for instance as piloting vessels across the bar. The duties required of those officers have no connection whatever with the parish of Plaquemines, either as to her territory or government, or population, no more than with any other parish of the State; but they pertain and belong exclusively to the port of New Orleans, and to the district, water and land, that constitutes that port.

Were this a case to test the right of a clerk, a sheriff, a police juror, or any other officer in the parish of Plaquemines, of course the action would have to be brought before the proper court of that parish, because, in the language of the act, the "case," or alleged usurpation, arose there. The act cited means this, and nothing more.

The law provides that a Branch Pilot for the port of New Orleans shall be appointed by the Governor.

That the Board of Examiners shall meet in the City of New Orleans twice a year to examine applicants for license.

That the Master and Wardens of the port of New Orleans are required to report cases of non-compliance on the part of pilots with certain requirements of the law to the Governor, who may, in such contingency, withdraw their licenses.

The pilots are required to give bond with two sureties residing in the City of New Orleans, to be approved by the Master and Wardens of the port of New Orleans, and a suit on such bond would have to be brought before the courts of New Orleans.

The defendant in this case is a resident of the City of New Orleans, and the general rule of practice is that a party must be sued at his domicil, C. P. 162; and this case we do not find to be within any of the exceptions to that rule.

We conclude, therefore, that this proceeding was properly instituted before the Civil District Court of the parish of Orleans, and the ruling of the judge a quo, sustaining the exception and dismissing the suit, was erroneous.

Nor do we see any force in the suggestion made in the brief of defendant's counsel, that this Court on its own motion should dismiss the suit for want of jurisdiction ratione materiœ. It is alleged that the emoluments of the office in question exceeds $2000, which are enjoyed by the defendant, and that is sufficient to give jurisdiction, regardless of the interest of the State.

It is, therefore, ordered that the judgment appealed from be annulled, avoided and reversed, and that the exception be overruled, and the case be remanded to be proceeded with according to law. The costs of the appeal to be paid by the appellees, and the costs of the lower court to await the determination of the suit.